**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**EULER HERMES NORTH AMERICA**
**INSURANCE COMPANY,**

      **Plaintiff,**

vs.

**QUALITY FOODS PRODUCE, INC.**
**AND JOSE PEREZ,**

      **Defendants.**

_____/

CASE NO: _____

## VERIFIED COMPLAINT

      Plaintiff, Euler Hermes North America Insurance Company ("Euler Hermes"), complains of Defendants, Quality Foods Produce, Inc. ("Quality Foods") and Jose Perez (collectively, "Defendants"), as follows:

### I.      THE PARTIES

      1.      Euler Hermes is a Maryland corporation with its principal place of business located at 800 Red Brook Boulevard, Owings Mills, Maryland 21117-1008.

      2.      Euler Hermes provides commodity insurance for the sellers of wholesale quantities of perishable agricultural commodities (hereinafter "Produce") in both interstate and foreign commerce.

      3.      Euler Hermes' insureds, specifically Produce Team, LLC and La Casa Del Aguacate, LLC (hereinafter "Assignors"), trade in fresh fruit and vegetable commodities the United States Department of Agriculture ("USDA") expressly recognizes as commodities covered under the provisions of the Perishable Agricultural Commodities Act, 1930, as amended, 7 U.S.C. §§ 499a-499t (2019) ("PACA").

4.      Quality Foods, a buyer of Produce, ordered, received, and accepted  Produce from Assignors, but ultimately failed to pay the invoices therefor.  As described in more detail below, Euler Hermes is the assignee and is subrogated to the rights of Assignors to collect the amounts due for those unpaid invoices.

5.      At all times relevant hereto, the Assignors were engaged, directly or indirectly, in the business of purchasing and/or selling Produce in wholesale or jobbing quantities and, therefore, are "dealers" of Produce as defined by PACA.

6.      At all times relevant hereto, the Assignors operated their business under valid USDA-issued PACA Licenses, which the USDA has identified as License Nos.: 20200399 and 20201332, respectively.

7.      Quality Foods is a Florida corporation with its principal place of business located at 5550 NW 185th St., Miami Gardens, Florida 33056. The registered agent of Quality Foods is Jose Perez who may be served with process at 5550 NW 185th St., Miami Gardens, Florida 33056, or wherever he may be found. At all times relevant to this action, Quality Foods:

   a.   operated, conducted, and otherwise was engaged in or carried on the business of buying, and selling Produce in interstate or foreign commerce;

   b.   is the holder of PACA license number 20211177, which the USDA issued to Quality Foods on or about September 7, 2021 and was active throughout Quality Foods' dealings with the Assignors;[1] and

   c.   specifically, Quality Foods purchased or received Produce, namely tomatoes, lettuce, carrots, potatoes, and avocadoes.

---

[1] A true and correct copy of Quality Foods' PACA license, as maintained by the USDA and made publicly available online, is attached hereto as **Exhibit A**.

8.     Defendant Jose Perez ("<u>Perez</u>" or the "<u>Principal</u>" and, collectively with Quality Foods, "<u>Defendants</u>") is a resident of Texas, is or was an employee,[2] officer, director, or member of Quality Foods, and was in a position to exercise dominion and control over Quality Foods at all times relevant to this action and otherwise participated in the tortious conduct or other wrongs set forth herein. Perez may be served at 5550 NW 185th St., Miami Gardens, Florida 33056, or wherever he may be found. Perez holds himself out as the General Manager and the Officer and/or Director of Quality Foods and his position as such is listed on Quality Foods' corporate documents filed with the Texas Secretary of State and credit applications submitted to Assignors.[3] Perez is also listed as a Principal on Quality Foods' PACA license.[4]

## II.     JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over this civil action arising under 7 U.S.C. § 499e(b)(2) ("liability may be enforced by … suit in any court of competent jurisdiction….") and 7 U.S.C. § 499e(c)(5) ("the several district courts of the United States are vested with jurisdiction specifically to entertain (i) actions by trust beneficiaries to enforce payment from the trust") of the PACA, pursuant to 28 U.S.C. § 1331 and because this matter involves the interpretation of a federal statute.

10.     This Court also has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1337 because PACA qualifies as an "Act of Congress regulating commerce" and several of Euler Hermes' claims herein arise under 7 U.S.C. § 499e(b)(2) and 7 U.S.C. § 499e(c)(5).

11.     This Court has supplemental jurisdiction over Euler Hermes' other claims pursuant to 28 U.S.C. § 1367(a).

---

[2] "Employed," "employ," or "employment" means "any affiliation of any person with the business operations of a licensee, with or without compensation, including ownership or self-employment." See 7 C.F.R. § 46.2(ee).
[3] *See* a true and correct copy of Quality Foods' corporate documents attached hereto as **Exhibit B**.
[4] *See* Exhibit A.

12.     This Court has *in rem* jurisdiction over Euler Hermes' claims pursuant to, *inter alia*, 28 U.S.C. § 1655.

13.     Venue in this district is based on 28 U.S.C. § 1391(b)(2) and (3) because (i) Defendants reside in this district and (ii) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated in this district.

### III.     NATURE OF THE CASE

14.     This is a civil action for monetary and injunctive relief, pursuant to which Euler Hermes seeks to enforce its rights against Defendants under both PACA's Unfair Conduct provisions and further seeks to enforce its rights under state law (*e.g.*, breach of contract, alter ego liability, tortious interference with receipt of trust assets, civil conspiracy, and aiding and abetting).

15.     As set forth in detail herein, Defendants have committed willful, repeated, and flagrant violations of Section 2 of PACA (*i.e.*, Unfair Conduct provisions) and, as a direct result of said violations. Euler Hermes, as  assignor and subrogee of Assignors' unpaid invoices, has incurred damages of not less than $124,241.00, plus contractually due costs of collection, including attorney's fees, as sums owing in connection with the unpaid Produce transactions between Quality Foods and Assignors.

## IV.   EXHIBITS

16.    True and correct copies of the following documents are attached hereto and are incorporated herein by this reference::

    a.  Quality Foods' PACA License **Exhibit A**

    b.  Quality Foods' Corporate Documents **Exhibit B**

    c.  Produce Team Declaration **Exhibit C**

    d.  Quality Foods' Credit Application with Produce Team **Exhibit C-1**

    e.  Produce Team's Unpaid Invoices to Quality Foods **Exhibit C-2**

    f.  Assignment Agreement from Produce Team to Euler Hermes **Exhibit C-3**

    g.  La Casa Declaration **Exhibit D**

    h.  Quality Foods' Credit Application with La Casa **Exhibit D-1**

    i.  La Casa's Unpaid Invoices to Quality Foods **Exhibit D-2**

    j.  Assignment Agreement from La Casa to Euler Hermes **Exhibit D-3**

    k.  Euler Hermes Declaration **Exhibit E**

## V.   FACTUAL ALLEGATIONS

**A.   Assignors' Assignment of Accounts Receivables to Euler Hermes.**

2.    Euler Hermes entered into written Agreements with the Assignors wherein the Assignors agreed to sell, and Euler Hermes agreed to purchase, certain of its Produce related accounts receivable.[5] Each of the Agreements were entered into as a condition to receiving loss payments under the various trade credit policies issued to the Assignors to reimburse for non-payment of goods supplied, so that Euler Hermes could recover for its losses

---

[5] A true and correct copy of the Agreements are attached hereto and incorporated herein by this reference as **Exhibits C-3 and D-3.**

3. Pursuant to Euler Hermes' agreement with the Assignors, the Assignors sold, conveyed voluntarily transferred, and assigned all, or the entirety of their right, title, and interest in and to their Produce related accounts receivable, including any and all PACA trust rights appurtenant thereto, if any, to Euler Hermes.

**B. Quality Foods' Produce Transactions with the Assignors.**

    *i.*     ***Produce Team, LLC.***

4. Between September 10 and 25, 2021, Quality Foods and Produce Team, LLC ("Produce Team") entered into a series of four (4) Produce transactions involving shipments of tomatoes.[6] At all times relevant hereto, Produce Team grew and sold Produce, specifically fresh tomatoes.[7]

5. The USDA provides a list of perishable agricultural commodities covered under PACA,[8] which includes tomatoes.

6. Quality Foods received the Produce in Florida that originated in Mexico and was then shipped from Produce Team's warehouse location in McAllen, Texas. Because Produce Team delivered Produce, which originated in Mexico, from its warehouse in Texas to Quality Foods in Florida, the Produce transactions at issue herein took place in interstate and foreign commerce.

7. Produce Team delivered Produce to Quality Foods in shipments of Produce that totaled or exceeded 2,000 pounds in weight. Because Quality Foods received individual shipments

---

[6] See a true and correct copy of the Produce Team Declaration is attached hereto as **Exhibit C**. A true and correct copy of the unpaid invoices that Produce Team issued Quality Foods, which Produce Team subsequently assigned to Euler Hermes, are attached hereto as **Exhibit C-2** (the "Produce Team Invoices").

[7] *See Id.*

[8] The USDA's Agricultural Marketing Service maintains and updates, in the ordinary course of its business, a complete list of the USDA's PACA covered commodities, including tomatoes, online at: https://www.ams.usda.gov/sites/default/files/media/Commodities%20Covered%20by%20PACA.pdf.

of produce weighing far in excess of 2,000 pounds, Quality Foods was engaged in the purchase of Produce in wholesale or jobbing quantities.[9]

8.      At all times relevant hereto, Quality Foods was engaged, directly or indirectly, in the business of purchasing and/or selling Produce in wholesale or jobbing quantities and, therefore, is a "dealer" of Produce as defined by PACA.

9.      At all times relevant hereto, Quality Foods was engaged in the business, directly or indirectly, of purchasing Produce from growers or others and distributing such Produce in commerce by resale or other methods, and, is therefore a "shipper" of Produce as defined by PACA.

10.      Quality Foods received and accepted all of the Produce purchased from Produce Team.

11.      Produce Team invoiced Quality Foods for all of the Produce sold which are identified in the Produce Team invoices, and Quality Foods agreed in those invoices that, "[a]fter payment is due, interest will accrue on unpaid balances at a rate of 18% per annum until paid," and that, "[i]n the event a legal or other action is commenced to collect sums due under this invoice, the prevailing party shall be entitled to reimbursement of all costs and fees including reasonable attorney's fees incurred."[10] The total amount of the Produce Team invoices to Quality Foods which remain unpaid and which have been assigned to Euler Hermes is $75,281.00.[11]

12.      Subsequent to Quality Foods' receipt and acceptance of the Produce and failure to pay for the Produce identified in the Produce Team invoices, Produce Team assigned all right,

---

[9] *Id.*
[10] See Exhibit C-2.
[11] *Id.*

title, and interest in those invoices to Euler Hermes, including any and all PACA trust rights and the right to receive payment under the Produce Team Invoices.

13.     Further, on information and belief,[12] Quality Foods sold all of the Produce described in the Produce Team Invoices to third parties and collected the proceeds thereof.

### ii.     *La Casa, Inc.*

14.     On or around September 25, 2021, Quality Foods and La Casa Del Aguacate, LLC ("La Casa") entered into a Produce transaction involving a shipment of avocados.[13]

15.     At all times relevant hereto, La Casa grew and sold Produce, specifically fresh avocados.[14] The USDA provides a list of perishable agricultural commodities covered under PACA, which includes avocados.

16.     Quality Foods received the Produce in Florida from La Casa at their warehouse location in Pharr, Texas. Because La Casa delivered Produce originating from Texas to Quality Foods in Florida, the Produce transactions at issue herein took place in interstate commerce.

17.     La Casa delivered Produce to Quality Foods in shipments of Produce that totaled or exceeded 2,000 pounds in weight. Because Quality Foods received individual shipments of produce weighing far in excess of 2,000 pounds, Quality Foods was engaged in the purchase of Produce in wholesale or jobbing quantities.[15]

---

[12] On or upon "information and belief," as used herein, means Euler Hermes is informed and believes a fact or condition to be true and, upon such information and belief, alleges the fact or condition in connection with the instant complaint. Euler Hermes' information and beliefs are based upon investigation and derived from such sources as: Euler Hermes' conversations with Defendants, e-mail correspondence with Defendants, publicly available government documents, relevant statements or information contained on Defendant owned or controlled websites, import/export documents, Euler Hermes' communications with Defendants, Euler Hermes and Defendants relevant produce transaction documents, documents Defendants uploaded to and otherwise provided Euler Hermes, and relevant third party documents.

[13] *See* a true and correct copy of the La Casa Declaration is attached hereto as **Exhibit D**. A true and correct copy of the unpaid invoices that La Casa issued Quality Foods, which La Casa subsequently assigned to Euler Hermes, are attached hereto as **Exhibit D-2** (the "La Casa Invoices").

[14] *See Id.*

[15] *Id.*

18.     At all times relevant hereto, Quality Foods was engaged, directly or indirectly, in the business of purchasing and/or selling Produce in wholesale or jobbing quantities and, therefore, is a "dealer" of Produce as defined by PACA.

19.     At all times relevant hereto, Quality Foods was engaged in the business, directly or indirectly, of purchasing Produce from growers or others and distributing such Produce in commerce by resale or other methods, and, is therefore a "shipper" of Produce as defined by PACA.

20.     Quality Foods received and accepted all of the Produce purchased from La Casa.

21.     La Casa invoiced Quality Foods for all of the Produce sold which are identified in the La Casa invoices. The total amount of the La Casa invoices to Quality Foods which remain unpaid and which have been assigned to Euler Hermes is $48,960.00.[16]

22.     Subsequent to Quality Foods' receipt and acceptance of and failure to pay for the Produce identified in the La Casa invoices, La Casa assigned all right, title, and interest in and to those invoices to Euler Hermes, including any and all PACA trust rights and the right to receive payment under the La Casa Invoices.

23.     Further, on information and belief, Quality Foods sold all of the Produce described in the La Casa Invoices to third parties and collected the proceeds thereof.

**C.     PACA Trust Preservation.**

24.     Pursuant to Exhibits C-2 and D-2 ("Assignors' Invoices"), Assignors sold to Quality Foods, and Quality Foods received and accepted Produce having the current aggregate value (inclusive of interest and contractual fees to date as well as credits and off-sets for any surplus payment on other invoices) of an outstanding balance not less than $75,281.00 at 18% per

---

[16] *Id.*

annum[17] and \$48,960.00.[18] Assignors utilized the assigned Assignors' Invoices to perfect and otherwise preserve its PACA trust rights in and to each load of Produce listed therein.[19]

25.      Each of Assignors' Invoices, including all unpaid invoices, contained the following language preserving its beneficial interest in and to Quality Foods' PACA trust assets:

> The perishable agricultural commodities listed on this invoice as sold subject to the statutory trust authorized by Section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 USC § 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of the commodities until full payment is received.[20]

26.      Quality Foods failed to object to Assignors' inclusion of the above-quoted statutory and contract language in Assignors' Invoices as a material part of the parties' agreement. The statutory and contract language quoted in the Credit Documents and Assignors' Invoices represent a material part of Assignors' standard credit terms. Assignors' inclusion of the contract language quoted in Assignors' Invoices represent a standard industry practice and, as such, is of no surprise to Quality Foods. Assignors' inclusion of the contract language quoted in Assignors' Invoices represent bargained for terms and are sums owing in connection with the Produce transactions.

27.      As the assignee and surbogee of all of Assignors' rights, title, and interests in and to the Produce related accounts receivable identified in Assignors' Invoices, and proper payee of Assignors' Invoices, Euler Hermes assumed the right to receive the proceeds of the Produce identified in Assignors' Invoices from Quality Foods, and any and all PACA trust rights thereunder.

---

[17] *See* Exhibit C-2.
[18] *See* Exhibit D-2.
[19] *See* Exhibits C-2 and D-2.
[20] *See Id.*

28.     Quality Foods failed to pay Euler Hermes for the Assignors' Invoices in the total amount of $124,241.00, despite repeated demands from Euler Hermes via its collection agent, Euler Hermes Collections North America Company.[21]

**D.     Bad Faith Dealings by Quality Foods.**

29.     As a dealer of Produce, Quality Foods had and has a duty to deal fairly with the Assignors and in good faith.[22]

30.     Additionally, upon information and belief, Quality Foods failed to preserve sufficient funds to fully satisfy all qualified PACA claims, such as Assignors' (now Euler Hermes's) claim for unpaid Produce transactions as asserted in this action. Quality Foods failed to ensure that its funds were freely available to satisfy its outstanding obligations to Assignors' (now Euler Hermes's) PACA trust rights, and other similarly situated Produce suppliers.

31.     At all times relevant hereto, upon information and belief, Quality Foods lacked the liquidity or free cash flow to pay Assignors (now Euler Hermes) for any of the shipments of Produce listed in Assignors' Invoices. Quality Foods lacked adequate capitalization to pay its Produce suppliers and to sustain any losses resulting from its inability to collect upon its own accounts receivables.

32.     Upon information and belief, Quality Foods improperly shifted the risk of Quality Foods' undercapitalization or bad debt risk to Assignors, which was insured, paid and assigned to Euler Hermes. Upon information and belief, at all times relevant hereto, Quality Foods was insolvent.

---

[21] *See* a true and correct copy of the Euler Hermes Declaration, which is attached hereto as **Exhibit E**.
[22] "Good faith," as used herein, means honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade. 7 C.F.R. § 46.2(hh).

33.     At all times relevant hereto, Quality Foods acted or failed to act by and through its Principals. As a dealer of Produce, the acts, omissions, or failures of Quality Foods' employees or agents constitute acts, omissions, or failures of Quality Foods. Upon information and belief, Quality Foods' employees or agents possessed actual and constructive knowledge of Quality Foods' insolvency. Quality Foods' employees or agents failed to voluntarily cease business operations and to otherwise refrain from receiving and accepting Produce on credit either while Quality Foods was insolvent or during a time when Quality Foods' liabilities exceeded its assets or it was unable to pay its undisputed debts when they became due.

**VI.     COUNT I**
**ENFORCEMENT OF THE PACA TRUST**
**[QUALITY FOODS]**

34.     Euler Hermes re-alleges paragraphs 1 through 33 as though fully set forth herein.

35.     Quality Foods is in possession, custody and control of all assets derived from  sale or other disposition of the Produce which is identified in Assignors' Invoices that Assignors assigned to Euler Hermes, including, without limitation: (a) accounts receivables; (b) proceeds from the sale of Produce; (c) cash; (d) any other assets commingled with proceeds of Produce; and (e) any other assets acquired or maintained with such proceeds, cash, assets, or other trust assets held in Quality Foods' name (collectively the "PACA Trust Assets").

36.     As assignee and subrogee of all of Assignors' right, title, and interest in and to the Assignors' Invoices, Euler Hermes is the holder of unpaid Produce-related accounts receivable.

37.     Quality Foods failed to deliver to Assignors or Euler Hermes sufficient funds from the PACA Trust Assets for any of the shipments of Produce listed in Assignors' Invoices. Quality Foods failed to preserve sufficient amounts of the PACA Trust Assets to fully satisfy all qualified PACA trust claims, such as the Euler Hermes's unpaid claims asserted in this action.

38.     The matters and actions alleged in this Count I constitute a violation by Quality Foods of Section 2 of the PACA. As a direct result of Quality Foods's failure to properly protect the PACA Trust Assets from dissipation, Euler Hermes, as subrogee and assignee, has suffered damages which are covered under the PACA trust in an amount not less than $124,241.00, plus further interest and contractually due costs of collection, including attorneys' fees, incurred in this action.

39.     As a result, Euler Hermes respectfully requests that the Court enter a temporary restraining order under Rule 65 of the Federal Rules of Civil Procedure enforcing the statutory trust established by Section 5(c) of PACA, 7 U.S.C. § 499e(c), by restraining the transfer of any and all assets of Defendants up to the sum of $124,241.00, except for payment to Euler Hermes, pending either payment to Euler Hermes by bank check or wire transfer of the sum of $124,241.00 or a further hearing to be set within fourteen (14) days of the issuance of the temporary restraining order.

40.     Within fourteen (14) days from the issuance of the temporary restraining order, after a hearing, Euler Hermes requests that a preliminary injunction order be entered to enforce the statutory trust under PACA. Specifically, a preliminary injunction order will ensure all trust assets of Quality Foods are maintained and segregated throughout this case, and compel Quality Foods to produce documentation, including financial and bank records, showing all trust assets in its possession or control.

## VII.   COUNT II
## PACA VIOLATIONS AND BREACH OF DUTIES
## 7 U.S.C. § 499b(4)
## [QUALITY FOODS]

41.     Euler Hermes re-alleges paragraphs 1 through 40 as though fully set forth herein.

42.     Assignors and Quality Foods entered into a series of transactions involving Assignors' sale of Produce to Quality Foods and Quality Foods' receipt and acceptance of said Produce between September 9 and 25, 2021 (the "Sales Period").[23]

43.     As a PACA licensee and dealer of Produce, Quality Foods possessed a statutory duty to promptly pay Assignors for any and all Produce transactions. Quality Foods' failure to pay Assignors for the Produce transactions identified in Assignors' Invoices constitutes a violation of an express duty under Section 2 of PACA.

44.     Quality Foods' use or disposition of any funds or other PACA Trust Assets in a manner that impairs or endangers Quality Foods' ability to faithfully and promptly pay Assignors constitutes a violation of an express duty under Section 2 of PACA.

45.     Quality Foods' issuance of checks or other payments to entities and individuals other than Assignors, during the Sales Period, is inconsistent with its obligation to maintain its PACA Trust Assets freely available to satisfy its obligations to its Produce suppliers.

46.     During the Sales Period, Quality Foods received and accepted not less than five (5) shipments of Produce from Assignors.[24]

47.     As assignee and subrogee of all of Assignor's right, title, and interest in and to the Assignors' Invoices, Euler Hermes is the holder of unpaid Produce-related accounts receivable.

---

[23] *See* Exhibits C-2 and D-2.
[24] *See* Exhibits C-2 and D-2.

48.     During the Sales Period, Quality Foods failed to pay Assignors for the Assignors' Invoices within the applicable payment terms that were in effect at the time of each transaction.

49.     During the Sales Period, Quality Foods lacked the liquidity or free cash flow to pay Assignors for the Produce transactions identified in Assignors' Invoices.

50.     During the Sales Period, Quality Foods' PACA Trust Assets were not freely available to satisfy its outstanding obligations to Assignors.

51.     All of the Assignors' Invoices remain unpaid.

52.     On information and belief, Quality Foods issued checks or otherwise made payments to various entities and individuals during the Sales Period while the Produce-related invoice assigned to Euler Hermes remained unpaid.

53.     On information and belief, Quality Foods issued checks or otherwise made payments to entities and individuals other than its unpaid Produce suppliers, including Assignors, during the Sales Period.

54.     Quality Foods' issuance of checks or other payments to entities and individuals other than Assignors during the Sales Period is inconsistent with its obligation to maintain its PACA Trust Assets freely available to satisfy its obligations to its Produce suppliers.

55.     As a PACA licensee and commission merchant or dealer of Produce, Quality Foods possessed a statutory duty to deal with Assignors pursuant to a standard of honesty in fact and were further obligated to observe commercial standards of fair dealing in the Produce trade, which standard is defined, inter alia, in Section 2 of PACA.

56.     Quality Foods breached its obligation of good faith and fair dealing by, among other things receiving and accepting Produce from Assignor on credit when Quality Foods knew or should have known of Quality Foods' insolvency. Quality Foods further breached its obligation of

good faith and fair dealing by selling Assignor's Produce to third parties and failing to Assignors, despite Quality Foods' express acknowledgement and agreement to pay Assignors under such Assignors' Invoices.

57.     The matters and actions or inactions alleged in this Count II constitute violations by Quality Foods of Section 2 of the PACA.

58.     As a direct result of Quality Foods's aforementioned actions and inactions, Assignors (now Euler Hermes) have incurred damages in an amount not less than $124,241.00, plus further interest and contractually due costs of collection, including attorneys' fees, incurred in this action.

## VIII.   COUNT III
## BREACH OF CONTRACT
## [QUALITY FOODS]

59.     Euler Hermes re-alleges paragraphs 1 through 58 as though fully set forth herein.

60.     Between September 9 and 25, 2021, Assignors and Quality Foods entered into a series of contracts, which are identified in Assignors' Invoices.

61.     Assignors assigned all right, title, and interest in and to Assignors' Invoices to Euler Hermes, including any and all PACA trust rights and the contract right to receive payment under Assignors' Invoices.[25]

62.     Assignors invoiced Quality Foods for the Produce identified in Assignors' Invoices.[26]

63.     Assignors delivered or otherwise caused all the Produce identified in Assignors' Invoices to be delivered to Quality Foods.

---

[25] *See* Exhibits C-3 and D-3.
[26] *See* Exhibits C-2 and D-2.

64.     Quality Foods received and accepted all of the Produce from Assignors identified in Assignors' Invoices at its location within the States of Texas and Florida.

65.     Quality Foods failed to pay Assignors (or Euler Hermes) for Assignors' Invoices.

66.     As a direct result of Quality Foods' breaches of contract, Assignors (now Euler Hermes)  have incurred damages in an amount not less than $124,241.00, plus further interest and all costs of collection, including attorneys' fees, incurred in this action.

## IX.     COUNT IV
## INTERFERENCE WITH RECIEPT OF TRUST ASSETS
## [QUALITY FOODS]

67.     Euler Hermes re-alleges paragraphs 1 through 66 as though fully set forth herein.

68.     As assignee and subrogee of Assignors' Produce-related accounts receivable, Assignors are unpaid suppliers of Produce and, thus, PACA trust beneficiaries who were entitled to immediate distribution of Quality Foods' PACA Trust Assets by virtue of the Assignors' Invoices. Euler Hermes, assignee of Assignors' claims, is now entitled to such distribution.

69.     On information and belief, Quality Foods paid the proceeds of the Assignors' Invoices to entities and individuals other than its unpaid Produce suppliers, instead of paying the proceeds to Assignors (or Euler Hermes).

70.     Quality Foods knew or should have known, at the time Quality Foods paid entities and individuals other than its unpaid Produce suppliers for the Assignors' Invoices that as purchaser and assignee of Assignor's Produce-related accounts receivable, Euler Hermes, was a PACA trust beneficiary entitled to immediate distribution of Quality Foods' PACA Trust Assets relating to the Assignors' Invoices.

71.     Despite such actual knowledge, Quality Foods utilized the proceeds of Produce identified in the Assignors' Invoices for purposes other than paying Assignors (or Euler Hermes), including paying other corporate debts.

72.     Quality Foods received and retained PACA Trust Assets, in the form of the proceeds of the Produce identified in the Assignors' Invoices, subject to Assignors' (now Euler Hermes') PACA trust rights herein.

73.     In retaining the PACA Trust Assets relating to the Assignors' Invoices, failing to pay such proceeds to Assignors (now Euler Hermes), and utilizing such proceeds for purposes other than paying Assignors (now Euler Hermes) as a PACA trust beneficiary, Quality Foods damaged that property and/or interfered with its delivery to Assignors and other similarly-situated PACA trust beneficiaries.

74.     Quality Foods benefitted from its wrongful retention and utilization of the PACA Trust Assets and its transfer of the same to non-PACA trust beneficiaries.

75.     As a direct result of Quality Foods's interference with the PACA Trust Assets and the delivery of the same to Assignors (now Euler Hermes), Euler Hermes has incurred damages in an amount not less than $124,241.00 plus further interest and all costs of collection, including attorneys' fees.

## X.     COUNT V
## BREACH OF FIDUCIARY DUTY
### [PRINCIPAL]

76.     Euler Hermes re-alleges paragraphs 1 through 94 as though fully set forth herein.

77.     At all times relevant to this action, the Principal was an officer, director, manager, or member of Quality Foods, and a person in charge of its business undertakings.[27]

---

[27] *See* Exhibits A, B, C-1 and D-1.

78.     At all times relevant to this action, the Principal controlled and managed Quality Foods' operations and had control over Quality Foods' financial dealings, including those involving the PACA Trust Assets.

79.     At all times relevant to this action, the Principal was in a position to control and manage Quality Foods' operations and had the ability to control Quality Foods' financial dealings, including those involving the PACA Trust Assets.

80.     At all times relevant to this action, the Principal had the authority to direct the payment of Quality Foods' operating funds and otherwise had the power to direct the application or disposition of its PACA Trust Assets.

81.     At all times relevant to this action, the Principal was in a position to influence Quality Foods' application of its operating funds and otherwise had the power to influence the application or disposition of its PACA Trust Assets.

82.     Upon information and belief, at all times relevant to this action, the Principal was an authorized signatory on Quality Foods' bank account(s) and otherwise had the power to direct the application or disposition of its PACA Trust Assets.

83.     As an officer, director, manager, or member of Quality Foods, and a principal listed on Quality Foods' PACA license, credit applications, and/or corporate documents the Principal possessed a statutory duty to ensure that Quality Foods performed all duties, express or implied, arising out of Quality Foods' undertakings in connection with Quality Foods' Produce transactions, which included, *inter alia*, ensuring Quality Foods' compliance with its obligations to Euler Hermes and others under PACA.

84.     As an officer, director, manager, or member of Quality Foods, the Principal was in a position to exercise judgment, discretion or control over Quality Foods' operations and its

financial dealings, which included, inter alia, ensuring that Quality Foods neither acted nor failed to act in any manner that could result in Quality Foods' violation of its obligations to Euler Hermes and others under PACA.

85.     As an officer, director, or shareholder of Quality Foods, the Principal knew or should have known of Quality Foods' failure to promptly pay Assignors for each shipment of Produce identified in Assignors' Invoices.[28]

86.     As an officer, director, or shareholder of Quality Foods, the Principal possessed the power necessary to counteract or obviate the decisions of Quality Foods, or others, not to pay Assignors (now Euler Hermes).

87.     Because the Principal controlled and/or was in a position to control Quality Foods, and Euler Hermes has not been paid as assignee of the Assignor's Invoices, the Principal has breached his fiduciary duties under PACA.

88.     Because the Principal was either in control and/or was in a position to control Quality Foods, and the Principal failed to ensure that there were, at all times, sufficient assets available to satisfy all of Quality Foods' obligations to Assignors (now Euler Hermes), and others, as unpaid Produce suppliers, the Principal has breached his fiduciary duties under PACA.

89.     As an officer, director, manager, or member of Quality Foods, and/or principal listed on Quality Foods' PACA license, the Principal was in a position to exercise judgment, discretion or control over Quality Foods' operations and its financial dealings, which included, inter alia, ensuring that Quality Foods neither acted nor failed to act in any manner that could result in the diversion of PACA Trust Assets or that could prejudice or impair the ability of Quality

---

[28] See Exhibits D-2, E-2, and F-2.

Foods' unpaid Produce suppliers, such as Assignors, to recover money owed to each of them in connection with their respective Produce transactions with Quality Foods.

90.     The Principal continues to hold any and all PACA Trust Assets having come into his individual possession as trustee for Assignors' (now Euler Hermes') beneficial interest in the PACA trust.

91.     Upon information and belief, during the Sales Period, the Principal knew or should have known that Quality Foods lacked the ability to pay its bills as they fell due in the ordinary course of business and was otherwise insolvent.

92.     Because the Principal either was in control or was in a position to control Quality Foods, and because Principal failed to counteract or obviate the decisions of Quality Foods, or others, not to pay Assignors (now Euler Hermes), the Principal has breached his fiduciary duties under PACA.

93.     Because the Principal controlled and/or was in a position to control Quality Foods, and Quality Foods failed to remit to Assignors (now Euler Hermes) the proceeds Quality Foods received from its sale of the Produce identified in Assignors' Invoices, Principal has breached his fiduciary duties under PACA.

94.     Principal authorized or approved Quality Foods' issuance of checks or other payments to entities and individuals other than its unpaid Produce suppliers during the Sales Period.

95.     Principal failed to object or otherwise act to prevent Quality Foods' issuance of checks or other payments to entities and individuals other than its unpaid Produce suppliers during the Sales Period.

96.     Principal is personally liable to Euler Hermes, which liability is joint and several with Quality Foods, for their breaches of fiduciary duties under PACA in an amount not less than $124,241.00, plus further interest and all costs of collection, including attorneys' fees, to be satisfied from Principal's personal assets.

## XI.   PRAYER

For these reasons, Euler Hermes respectfully seeks the entry of an Order providing as follows:

A.     As to Count I, (i) entering a temporary order restraining the transfer of any and all assets of Defendants up to the sum of $124,241.00 except for payment to Euler Hermes, pending either payment to Euler Hermes by bank check or wire transfer of the sum of $124,241.00, and setting a hearing within fourteen (14) days of the issuance of the Order; (ii) entering a preliminary injunction, within fourteen (14) days from the issuance of the temporary restraining order and after a hearing, that enjoins access to any and all assets of Defendants up to the sum of $124,241.00 except for payment to Euler Hermes, pending either payment to Euler Hermes by bank check or wire transfer of the sum of $124,241.00 through the date of a final judgment; (iii) entering an Order compelling Defendants to produce documentation, including financial and bank records, showing all trust assets in its possession or control; and (iv) entering a Final Judgment in favor of Euler Hermes and against Quality Foods in the current amount of not less than $124,241.00, plus further interest and contractually due costs of collection, including attorneys' fees;

B.     As to Count II, entering a Final Judgment in favor of Euler Hermes and against Quality Foods for (i) failing to maintain the PACA trust; (ii) failing to promptly pay Euler Hermes; (iii) breach of express or implied duties under PACA; and (iv) breach of the duty of good faith and fair dealing under PACA, in the current amount of not less than $124,241.00, plus further interest

and contractually due costs of collection, including attorneys' fees, incurred in this action, less any actual recovery on other Counts herein;

       C.     As to <u>Count III</u>, entering a Final Judgment in favor of Euler Hermes and against Quality Foods for breach of contract in the current amount of not less than $124,241.00, plus further interest and contractually due costs of collection, including attorneys' fees, incurred in this action, less any actual recovery on other Counts herein;

       D.     As to <u>Count IV</u>, entering a Final Judgment in favor of Euler Hermes and against Quality Foods, for interference with receipt of trust assets, in the current amount of not less than $124,241.00, plus further interest and contractually due costs of collection, including attorneys' fees, incurred in this action, less any actual recovery on other Counts herein;

       E.     As to <u>Count V</u>, entering a Final Judgment in favor of Euler Hermes and against the Principal, for breach of his fiduciary duties to the PACA trust, in the current amount of not less than $124,241.00, plus further interest and contractually due costs of collection, including attorneys' fees, incurred in this action, less any actual recovery on other Counts herein;

       F.     Providing such other and further relief as the Court deems appropriate upon consideration of this matter.

Respectfully submitted,

By: */s/ Anthony Rollo* .

**ANTHONY ROLLO**
Florida Bar No. 1021179
**McGLINCHEY STAFFORD, PLLC**
301 Main St, Ste 1400
Baton Rouge, LA 70801
Telephone: (225) 382-3685
Fax: (225) 570-4625
E-Mail: arollo@mcglinchey.com

**ALLEN S. KATZ**
Florida Bar No. 87866
**McGLINCHEY STAFFORD, PLLC**
One E Broward Blvd, Ste 1400, Fort
Lauderdale, FL 33301
Telephone: (954) 356-2522
Fax: (954) 252-4591
Primary E-Mail: akatz@mcglinchey.com
Secondary E-Mail: alozada@mcglinchey.com

***Attorney for Plaintiff Euler Hermes***
***North America Insurance Company***

**OF COUNSEL:**

**RUDY J. CERONE**
LA State Bar: 14137
rcerone@mcglinchey.com
*Pro Hac Vice* Admission Pending
**MCGLINCHEY STAFFORD, PLLC**
601 Poydras Street, 12th Floor
New Orleans, Louisiana 70130
Telephone: (504) 596-2786
Fax: (504) 910-9362